UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In Re: ) Case No: 11-46326
Tree and Land, Inc. )
) Chapter 11
)
)
Debtor(s) )
) Honorable Carol A. Doyle

## FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND PROVISION OF ADEQUATE PROTECTION

Tree and Land, Inc., an Illinois corporation, as debtor in possession, filed voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in this Court on November 15, 2011 (the "Filing Date"), and filed a motion (the "Motion"), for the entry of this Final Order (the "Order"), authorizing the Debtor to use cash collateral and providing adequate protection to Centrue Bank (the "Bank").

Notice of the Motion has been given to the Bank, to the Debtor's 20 largest unsecured creditors, to the United States Trustee, and to any other party entitled to notice under Fed. R. Bank. P. 4001(b), and such notice is appropriate under the circumstances and in light of the emergency nature of the Motion and the notice procedures for a further objection to this Order set forth below.

I       The Court has been advised that the Debtor and the Bank have stipulated to the following:

A       On the Filing Date, the Debtor filed voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since then the Debtor has remained in possession of its assets and has continued to administer the affairs of its estate as debtor in possession in accordance with §§ 1107 and 1108 of the Bankruptcy Code.

B       As of the Filing Date, the Debtor was indebted to the Bank (the Bank's Claim"), based upon a promissory note described in the Motion (the "Note") and other loan documents (collectively with the Notes the "Loan Documents"), executed by the Debtor.

C.      As of the filing date, the Bank's Claim totaled $1,703,398.36 (the "Prepetition Indebtedness"), calculated as follows:

| | | | | |
|---|---|---|---|---|
| | a. | Unpaid principal as of 11/15/11 | $ | 1,629,888.59 |
| | b. | Unpaid interest accrued as of 11/15/11 | $ | 45,154.02 |
| | c. | Late charges owed as of 11/15/11 | $ | 17,098.25 |
| | d. | Attorneys' Fees | $ | 11,257.50 |
| | | **Total** | $ | **1,703,398.36** |

The Prepetition Debt does not include any interest, late charges, costs and fees, including, without limitation, attorneys' fees and expenses that have accrued and continue to accrue after the Filing Date.

D.      The Bank's Claim is secured by a duly perfected, valid, first priority lien on substantially all of the personal property of the Debtor (the "Prepetition Collateral"), and the cash collateral (as that term is defined in § 363(a) of the Bankruptcy Code), generated therefrom (for purposes of this Order, the "Cash Collateral").

E.      The Bank has an interest in the Cash Collateral. Accordingly, the Bank is entitled to adequate protection for the Debtor's use of its Cash Collateral under §§ 361 and 363 of the Bankruptcy Code.

II    Based upon the Motion, the record before the Court, the Court finds as follows:

A    The Debtor has provided such notice as was practicable under the circumstances to the Bank, the 20 largest unsecured creditors of the Debtor, the United States Trustee, and any other person entitled to notice under Rule 4001(b).

B    No creditor's committee has been appointed in the case.

C    Good cause has been shown for the entry of this Order. Among other things, entry of this Order will minimize disruption of the Debtor's business operations, will increase the probability of the collection of the Debtor's accounts and the probability of maximizing any potential return to the Debtor's creditors. In consideration for the consent given herein the Bank is entitled to the relief set forth in this Order. The protections afforded to the Bank's interests in this Order are fair under the circumstances and the entry of this Order is in the best interests of the Debtor, its creditors, and its estate.

III.    Accordingly, it is hereby adjudged, ordered and agreed as follows:

A    Subject to the terms and conditions set forth below, the Debtor is authorized to use Cash Collateral in accordance with the operation budget attached as Exhibit 1 to the Motion, or such other budget approved in writing by the Bank as provided herein, plus all adequate protection payments to the Bank as provided herein, during the period beginning on the date of the entry of this Order and ending at 12:01 am on June 30, 2012 (the "Termination Date").

B    The Debtor shall deposit all Cash Collateral in a debtor-in-possession account (the "DIP Account"), maintained at First Midwest Bank. Karen Matan and Julie Schoeling will be the only authorized signers on the DIP Account.

C    The Debtor shall prepare a monthly operating budget for the remainder of January 2012 and for each subsequent month and shall deliver it to the Bank on or before the 25th day of the preceding month (the "Budget"). The Budget must be approved by the Bank. In the event the Bank does not approve the Budget, the Debtor may not use Cash Collateral except upon further order of Court. Unless the Debtor receives an objection to the Budget from the Bank within 5 days of the Bank's receipt thereof, the Budget will be deemed to have been approved by the Bank.

D    The Debtor is authorized to use Cash Collateral in the DIP Account only to pay for the expenses set forth in the approved Budget and to make adequate protection payments to the Bank provided herein.

E    Neither the Bank's agreement to the Debtor's use of Cash Collateral nor the Bank's approval of any Budget may be construed as the Bank's approval of the purposes or amounts for which its Cash Collateral is expended for purposes of § 506(c) of the Bankruptcy Code or to otherwise become liable for any cost, expense, disbursement, liability, or obligation of any kind or nature payable by or on behalf of the Debtor. This Order does not create a joint venture or partnership of any kind between the Debtor and the Bank.

F    As adequate protection against the diminution of the Bank's interest in the Prepetition Collateral, the Bank is hereby granted, pursuant to §§ 361, 363, and 364 of the Bankruptcy Code, valid, perfected, and enforceable security interests in and liens upon all property of the Debtor and its estates, whether now existing or hereafter acquired or arising and wherever located, and all proceeds, rents, products, or profits thereof (collectively, the "Postpetition Collateral" and together with the Prepetition Collateral, collectively, the "Collateral"). The security interest in and liens on the Postpetition Collateral shall –

(1) at all times be senior to the rights of the Debtor and any successor trustee in these or any subsequent proceedings under the Bankruptcy Code; and

(2) be subordinate only to valid, enforceable and non-avoidable liens and security interests existing as of the Filing Date.

G The security interests and liens granted by this Order –

  (1) are in addition to all security interests, liens, and rights of set-off existing in favor of the Bank on the Filing Date;

  (2) are and will be valid, perfected, enforceable, and effective as of the Filing Date without any further action by the Debtor or the Bank and without the execution, filing, or recording of any financing statements, security agreements, mortgages, or other documents; and

  (3) shall secure payment of the Bank's Claim in an amount equal to any diminution in value of the Bank's interest in the Prepetition Collateral (the "Adequate Protection Obligation"), which occurs during the pendency of the Debtor's bankruptcy case, whether such diminution is a consequence of the Debtor's use of the Prepetition Collateral, economic depreciation of the Prepetition Collateral, or otherwise.

H If the Bank requests the Debtor to execute and deliver financing statements, mortgages, or other instruments or documents considered by the Bank to be necessary or desirable to further evidence the perfection of the liens and security interests granted in this order, the Debtor is authorized to execute and deliver those financing statements, instruments, and documents.

I The Bank, acting in its sole discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any register of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer is authorized and directed to file or record such copy of this Final Order.

J As additional adequate protection, Debtor shall make monthly payments in the amount of Seven Thousand Five Hundred Dollars ($7,500.00) (each an "Adequate Protection Payment" and, collectively, the "Adequate Protection Payments") to the Bank until confirmation of a Chapter 11 Plan, with the first Adequate Protection Payment due on or before January 30, 2012 and each subsequent Adequate Protection Payment due on or before the thirtieth calendar day of each month thereafter. To the extent that the Court determines that the lien notices sent by Greener Gardens Sod Farm, LLC (the "Greener Garden Lien Notices"), described in greater detail in Docket No. 28, are void and of no force and effect or otherwise determined to be in violation of the automatic stay, then the Adequate Protection Payments shall increase to Nine Thousand Dollars ($9,000.00). This increase shall take effect the later of (i) February 28, 2012, or (ii) the date that the Court makes such a determination regarding the Greener Garden Lien Notices.

K The Debtor shall keep the Collateral insured against loss or damage resulting from fire, flood or other hazards, casualties and contingencies with replacement cost endorsements (without depreciation) in such amounts as approved by the Bank. This insurance shall be carried with companies approved by the Bank and the policies and renewals thereof shall be deposited with and held by the Bank. The Debtor shall prepare and/or execute any and all documents in favor of the Bank to preserve its secured claim in the Collateral.

L The Debtor shall duly pay all postpetition taxes, personal and real property taxes, assessments and governmental and other charges, levied or imposed, which are, or which if unpaid might become, a lien or charge upon the Collateral or Cash Collateral.

M The Debtor shall account for all expenses authorized herein and, upon written request of the Bank, shall deliver documents evidencing the expenses.

N On or before the 25th day of each month the Debtor shall prepare and send to the Bank in care of the Bank's counsel, a copy of the Monthly Chapter 11 Business Operating Reports required to be filed for the previous months with the United States Trustee and the Clerk of the Court pursuant to Bankruptcy Rule X-1007 and the Guidelines for Debtors-in-Possession promulgated by the United States Trustee (the "Operating Reports").

O The following provisions relating certain real property described more particularly on the attached Exhibit A (the "Real Property") apply now relating to and will be incorporated into any Chapter 11 Plan of

Reorganization or Chapter 11 Plan of Liquidation filed by the Debtor during this case and any and all successor cases:

    (1) The Debtor shall aggressively market the Real Property for sale such that the Real Property shall be sold privately to a third party buyer acceptable to Bank under Section 363 of the Bankruptcy Code on or before April 30, 2012. If an Order approving such sale has not been entered on or before April 30, 2012, then the Real Property shall be sold at public auction with a closing not later than June 30, 2012. The Bank shall have the absolute right to credit bid the remaining principal indebtedness and accrued interest owed by the Debtor to the Bank at such public auction.

    (2) The Debtor shall keep Bank apprised of any and all material discussions and negotiations pertaining to the sale of the Real Property. On or before the 15th day of each month commencing February 15, 2012, the Debtor will tender to the Bank a report describing its progress in selling the Real Property (each a "Monthly Progress Report" and, collectively, the "Monthly Progress Reports") for the preceding calendar month (the "Reporting Period"). Each Monthly Progress Report shall include copies of any and all correspondence, letters of intent, agreements, offers, or other similar documents received by Debtor during the applicable Reporting Period and pertaining to the sale of the Real Property.

P    If any Chapter 11 Plan is proposed or confirmed without incorporating the terms and conditions of Paragraph III.O above, the Bank shall be entitled to object to such Plan. Unless otherwise ordered by the Court after notice to the Bank and an opportunity to be heard, in the event any Plan omitting the terms and conditions of Paragraph III.O is confirmed, Bank may immediately move for relief from the automatic stay.

Q    The failure of the Debtor to perform its obligations under this Order constitutes a default. If the Bank gives notice of the default and such default is not cured within 10 business days of the date of such notice, then the Debtor's authority to use Cash Collateral will be automatically terminated. Notice of default must be given in the manner and to the persons prescribed by Rule 4001(b).

R    Each of the following events shall constitute an event of default ("Event of Default") hereunder:

    (1) An Order entered dismissing this case, converting the case to a case under Chapter 7 of the Code, appointing a trustee under Chapter 11, appointing an examiner to perform any duties of a trustee other than those set forth in Section 1106(a)(3) or (a)(4) of the Code, or terminating the authority of the Debtor to conduct business; or

    (2) Any violation by the Debtor of any provision of this Order.

S    Upon the occurrence of an Event of Default, the Debtor shall immediately cease using Cash Collateral, segregate and hold all Cash Collateral and unsold Collateral in trust for the benefit of the Bank, and after five days written notice to the Debtor or its attorney shall have been given by the Bank without the Debtor having cured the Event of Default within such one-day period, the Bank shall be entitled to a hearing for relief of the automatic stay within 24 hours. If the Debtor fails to respond to the Bank's motion for relief from the automatic stay within such 24-hour period, the automatic stay imposed by § 362 shall be modified, without further court order of any kind, to permit (but not require) the Bank to take possession of any and all of its collateral (and, upon the Bank's request, the Debtor shall surrender the same to the Bank), to notify account debtors that all such payments must be made directly to the Bank, and to take any such action it deems appropriate to collect such accounts and other collateral. Once the automatic stay of § 362 of the Code is modified or terminates with respect to the Bank, it shall not be reimposed, reinstated or otherwise become applicable, whether under § 105 or 362 of the Code, Bankruptcy Rule 9024, by virtue of conversion of this case, material change and circumstances or otherwise.

T     Upon the earlier of (i) the occurrence of an Event of Default, (ii) the Termination Date (as defined in paragraph III.A), or (iii) the entry of an Order confirming a Chapter 11 plan, the Bank shall be deemed to have an allowed administrative priority claim, pursuant to section 507(a)(2) and 503(b), for all filing, recording and audit fees, and the attorney fees, costs and expenses incurred by the Bank:

      (1)     In the preparation of this Order, the various security agreements, instruments and documents which may be required in connection with the order to be made to Debtor;

      (2)     In enforcing this Order, collecting any of the Prepetition Indebtedness or defending any challenge by the Debtor, any party in interest or committee, to the extent, validity or priority of the Bank's lien or the Prepetition Indebtedness; and

      (2)     In the representation of the Bank in this case.

U     The Debtor is authorized and directed to perform all acts and execute and comply with the terms of such other documents, instruments and agreements which the Bank may reasonably require and/or which may otherwise be deemed necessary by the Bank to effectuate the terms and conditions of this Order.

V     No delay or failure to exercise any right, power or remedy accruing to the Bank upon breach or default by the Debtor under this Order or any document or agreement shall impair any such right, power or remedy of the Bank, nor shall it be construed to be a waiver of any such breach or default, nor an acquiescence therein, nor of any breach or default heretofore or hereafter occurring.

W     The provisions of this Order shall be binding upon and inure to the benefit of the Bank, and the Debtor and their respective successors and assigns.

X     All defenses or claims of every kind or nature, whether existing by virtue of state, federal Bankruptcy or non-bankruptcy law, by agreement or otherwise, against the Bank, the Prepetition Indebtedness or the Collateral, as such defenses or claims may presently exist or in the future, whether known or unknown, are hereby forever waived, relinquished and released by the Debtor, and its successors and assigns, against the Bank, its successors and assigns and its officers, agents, servants, employees and attorneys, including without limitation, any affirmative defense, counterclaim, setoff, deduction or recoupment.

Y     This Order integrates all terms and conditions mentioned herein or incidental hereto, and supersedes all prior negotiations, whether written or oral, and prior writings with respect to subject matter hereof to the extent they are inconsistent with the terms of this Order.

Z     If any provision of this Final Order is hereafter modified, vacated or stayed by subsequent order of this or any other Court for any reason, such modification, vacation, or stay shall not affect in any way whatsoever the validity of any liability incurred pursuant to this Final Order and prior to the later of (i) the effective date of such modification, vacation, or stay; or (ii) the entry of the order pursuant to which such modification, vacation, or stay was established. Such modification, vacation, or stay shall not affect in any way whatsoever the validity, priority, or enforceability of the liens on Postpetition Collateral. In the event this Order is modified or otherwise amended at, or as a result of any subsequent hearing, the Bank shall have the absolute right to withdraw its consent to any further use of its Cash Collateral, which withdrawal shall be communicated to Debtor's counsel in writing and shall be effective upon receipt of such notification. Thereafter, the Debtor shall immediately cease using such Cash Collateral and shall segregate and hold such Cash Collateral and any unsold Collateral Crops in trust for the Bank pending further Order of the court after a hearing upon notice to all affected parties.

AA     The Automatic Stay provisions of § 362 of the Bankruptcy Code are vacated as to the Bank to the extent necessary to implement the terms of this Order.

BB   The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order: (a) confirming any Chapter 11 plan; (b) converting the case to a Chapter 7 case; or (c) dismissing the case. The terms and provisions of this Final Order as well as the claims and liens granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of any such order and such claims and liens shall maintain their priority as provided by this Final Order and to the maximum extent permitted by law until the Prepetition Indebtedness is indefeasibly paid in full.

CC   While the Debtor adheres to the agreement, the Bank hereby agrees not to take any further actions to collect the amount of the loan and all applicable costs and interest from the individuals named as defendants in the litigation currently pending in the Circuit Court of the Thirteenth Judicial Circuit, LaSalle County, Illinois, styled *Centrue Bank v. Tree and Land, Inc. et al.*, Case No. 11 L 180.

DD   The subject of this Order is a core proceeding within the meaning of 28 U.S.C. § 157. This Order is immediately appealable and valid and fully effective upon its entry.

EE   This Court shall retain jurisdiction to resolve issues which arise pursuant to this Final Order.

Enter:

Honorable Carol A. Doyle
United States Bankruptcy Judge

Dated: February 16, 2012

Prepared by counsel of Movant:

Myler, Ruddy & McTavish
Richard G. Larsen ARDC No 6193054
105 E. Galena Blvd., 8th Floor
Aurora, IL 60505
(630) 897-8475   (630) 897-8076 Fax

# EXHIBIT "A"

# LEGAL DESCRIPTION

## EXISTING RESIDENTIAL LOTS

Lots 2392; 2401; 2403; 2404; 2407; 2426; 4088 & 4090 In the amended final plat of phase 1 of Hidden Acres Subdivision, according to the plat thereof recorded December 8, 2005 as document number 2005-32278 situated in the county of LaSalle and the state of Illinois.

## UNDEVELOPED LAND (Proposed Phase 2)

That part of the east half of section 12, township 35 north, range 4 east of the third principal meridian and part of the west half of section 7, township 35 north, range 5 east of the third principal meridian, described as follows: beginning at the north east corner of lot 2381 of Timber View Estates according to plat thereof recorded on May 1, 2001, as document R2001-12055, said point being on the south line of Hidden Acres Subdivision according to the plat thereof recorded on July 22, 2004, as document R2004-19941; thence north 89 degrees 23 minutes 32 seconds east along said south line, 792.54 feet to the southeast corner of lot 2392 of said Hidden Acres; thence north 00 degrees 34 minutes 58 seconds west along said east line and said east line extended, 282.13 feet; thence north 89 degrees 23 minutes 32 seconds east, 66.00 feet to the west line extended north of lot 2404 in said Hidden Acres; thence south 00 degrees 34 minutes 58 seconds east along said east line extended and said east line, 290.77 feet to the south west corner of said lot 2404; thence north 88 degrees 16 minutes 46 seconds east along the said south line, 183.04 feet; thence north 75 degrees 03 minutes 18 seconds east along said south line, 281.43 feet; thence north 70 degrees 58 minutes 13 seconds east along said south line, 770.85 feet to the southeast corner of lot 2422 of said Hidden Acres; thence north 00 degrees 42 minutes 03 seconds east along the east line of said lot 2422, 191.94 feet to the southeasterly line of north 4080th road; thence northeasterly along said south line, said line being a curve to the left with radius of 250.05 feet, an arc length of 86.19 feet; and chord bearing north 40 degrees 16 minutes 48 seconds east and chord length of 66.00 feet to the southwest corner of lot 4048 of amended final plat of lots 4084, 4088, 4090, and 4096 Hidden Acres Subdivision according to the plat thereof recorded December 08, 2005, as document number 2005-32278; thence south 89 degrees 17 minutes 57 seconds east along the south line of said lot 4048, 383.67 feet to the south east corner of said lot; thence north 25 degrees 22 minutes 12 seconds east along the southeasterly line of said amended plat, 276.18 feet; thence north 66 degrees 11 minutes 36 seconds east, 193.94 feet; thence north 59 degrees 06 minutes 43 seconds east, 106.73 feet to the east line of lot 3 extended south as monumented, of a subdivision according to the plat thereof recorded in book T, page 136 in the LaSalle county recorders office; thence north 00 degrees 53 minutes 12 seconds west along said east line extended, 211.54 feet to the south line of said subdivision; thence north 89 degrees 08 minutes 37 seconds east along said south line and said south line extended 500.54 feet; thence south 01 degrees 08 minutes 50 seconds west, 126.69 feet; thence south 04 degrees 48 minutes 49 seconds east, 205.23 feet; thence south 09 degrees 41 minutes 10 seconds west, 88.77 feet to the northerly line of the Burlington Northern Railroad right of way; thence southwesterly along said right of way line, said line being a curve to the left with a radius of 7658.79 feet, an arc distance of 194.85 feet and chord bearing south 53 degrees 50 minutes 59 seconds west with a chord length of 194.84 feet; thence south 52 degrees 20 minutes 12 seconds

west along said north line, 815.50 feet to a non-tangent curve; thence southwesterly along said right of way being a curve to the right with a radius of 2888.25 feet, an arc distance of 623.64 feet and chord bearing south 57 degrees 21 minutes 58 seconds west with a chord length of 622.42 feet; thence south 84 degrees 31 minutes 46 seconds west, along said north line, 158.52 feet; thence south 85 degrees 01 minutes 09 seconds west, along said north line, 432.03 feet; thence south 84 degrees 07 minutes 38 seconds west, along said north line, 161.73 feet to a non-tangent curve; thence southwesterly along said right of way line being a curve to the left with a radius of 3133.73 feet, an arc distance of 309.37 feet and chord bearing of south 60 degrees 43 minutes 15 seconds west with a chord length of 309.24 feet; thence south 57 degrees 11 minutes 30 seconds west, along said north line, 86.20 feet to the east line of lot 2390 of said Timber View Estates; thence north 00 degrees 44 minutes 49 seconds west along said east line 97.08 feet to the northeast corner of said lot 2390; thence south 89 degrees 36 minutes 12 seconds west along the north line of said lot 2390 and the north line extended, 993.08 feet to the east line of said Timber View Estates; thence north 00 degrees 46 minutes 08 seconds west along the east line of said Timber View Estates, 564.19 feet to the point of beginning in LaSalle county, Illinois.

## PROPERTY TAX DATA

Public records indicate that the subject parcels are assigned the following property tax identification numbers in Serena Township, LaSalle County, Illinois:

| Lot No. | Location/ Property Tax ID Number(s) | 2009 Property Taxes |
| --- | --- | --- |
| **Developed Residential Lots** | | |
| Lot 2392 | 09-12-210-011 | $ 110.00 |
| Lot 2401 | 09-12-211-001 | $ 110.00 |
| Lot 2403 | 09-12-212-002 | $ 110.00 |
| Lot 2404 | 09-12-213-001 | $ 110.00 |
| Lot 2407 | 09-37-101-001 | $ 110.00 |
| Lot 2426 | 09-37-103-004 | $ 110.00 |
| Lot 4088 | 09-37-104-007 | $ 110.00 |
| Lot 4090 | 09-37-104-006 | $ 110.00 |
| **Undeveloped Land** | | |
|  | 09-12-227-000 | $ 114.50 |
|  | 09-37-123-000 | $ 18.20 |